THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FRED J. RUOCCO and Others, Defendants.

Supreme Court, Kings County, April 26, 1930.

*Hamilton Ward, Attorney-General [Abraham N. Davis* on the brief], for the People.

*Sidney Rosenbaum*, for the defendants.

DUNNE, J.   It appears that the San Francisco Bay Toll Bridge Company owns and operates a certain bridge in the State of California pursuant to a franchise granted it by that State.   It further appears that the San Francisco Bridge Securities Corporation was organized soley for the purpose of holding all of the common and preferred stock issued by the San Francisco Bay Toll Bridge Company and for issuing its own preferred and common stock share for share against the deposit of stock of said operating company.   It is charged by the Attorney-General that the defendants have offered for sale the common stock of the San Francisco Bay Toll Bridge Company, whereas, in fact, they have delivered instead the voting trust certificates issued for the common stock of the San Francisco Bridge Securities Corporation.   In their papers submitted in opposition to this motion for an injunction defendants deny that " any securities were sold to customers who were not told and who did not know that this stock was held by a holding company and that they were receiving voting trust certificates representing common stock of such holding company."

However, upon the investigation prior to the institution of this action, one of the members of the defendant firm under examination testified in part as follows: " Q. How do you account for the fact that you offered for sale the common stock of the San Francisco Toll Bridge Company and then when you actually made a sale you delivered the stock of the San Francisco Bridge Securities Corporation?   A. I have always been of the opinion that I was selling the actual stock of the San Francisco Bay Toll Bridge Company, because the San Francisco Bay Toll Bridge Company's entire common stock issued is placed and has been placed in the voting trust agreement by the bankers.   *   *   *   I have always been of the impression inasmuch as I was selling the stock of a company who owned and controlled the actual San Francisco Bay Toll Bridge common stock, that I was actually selling the San Francisco

Bay Toll Bridge common stock certificate." It appears that the two companies are closely connected; that one company has been formed for the sole purpose of holding the stock of the other, and that it is within reasonable anticipation that the financial fortunes of the one will be reflected in the other. However, neither within contemplation of law or fact is one the *alter ego* of the other — they are distinct entities.

The affidavit in opposition states " we may not have stressed the difference in these companies for the reason that we had assumed and felt without question that the shares of the securities corporation were in every respect the equivalent of shares in the toll bridge company." The explanation, however, cannot of itself be set forth as excusatory of the acts complained of. It has been held that " promoters are under a duty to make reasonable investigation before issuing a prospectus, and to the extent that they fail in the performance of their duty, lack of scienter will not relieve them from liability in actions brought under the Martin Act." (*People v. Federated Radio Corporation*, 244 N. Y. 33.) I think, therefore, that the defendants should have made it definitely clear to prospective purchasers the distinction between the stock of the two companies, and, upon their failure so to do, the Attorney-General, charged with a duty to protect the public, was justified in moving. Having determined that the defendants have engaged in acts which, even though possibly unintentional, are at least violative of the statute under the decision quoted, the court approaches a consideration of the relief to be applied — the latter question a proposition for the exercise of discretion. It cannot be said that the brokers here have been dealing in securities, the subject-matter of which was merely nebulous or visionary or that they were engaging in deceitful practices contrary to the plain rules of common honesty.

The property owned by the San Francisco Bay Toll Bridge Company consists of a completed bridge with approaches constructed at a cost of approximately $7,000,000. Its toll rates are regulated by the State of California, and the papers before me reveal that there are attributes which render the improvement, at least from a possible speculative viewpoint, comparable with certain other bridges of like character. There are other indicia which point to a substantial offering. Further, the court is impressed by the abundance of letters annexed to the papers which have been sworn to by the purchasers of the stock. Such letters are to the effect that the customers were dealt with fairly by the defendants. The relief sought by the Attorney-General is drastic and extensive. The granting of the application will effect a possible prohibition of continuance by defendants in the brokerage business.

In the papers submitted in opposition there is contained the following recitation: " If the court agrees with the Attorney-General that in the present condition of the bridge operations this stock should not be sold to the public, defendants are willing to abstain from so doing until later operations indicate higher earnings." I think the purpose of the present application will be fully served if it be made known to the defendants that the court joins with the office of the Attorney-General in condemnation of the failure to make clear the distinction between the stock of the two companies under consideration; that the prospectus issued to the public should contain a true description of the stock actually offered for sale and to be delivered, and that there is to be in such advertisement no undue inflation of the correct value of such stock. To this extent an injunctive order will issue. In arriving at the present determination the court is guided by the fact that it has not been shown that the brokers were motivated by evil design or that they can be said within judicial cognizance to have engaged in the flotation of worthless securities. It is to be distinctly noted, however, in this connection that the court expresses no opinion either as to the actual or potential worth of the stock, if any. The determination herein made affords the defendants an opportunity, if they engage strictly within the sphere of clearly legitimate practices in their transactions with a trusting public, to continue in business. Any further infraction, be it willful or otherwise, will serve to demonstrate that the warning here issued will have been of no avail. Upon proof of such fact the Attorney-General is given leave to apply for any extension of the relief here granted, as he may be advised.